IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSE REUTER                :
                          :
     v.                 :          CIVIL NO. CCB-06-334
                          :
"WASHINGTON COUNTY    :
SUPERVISORS" et al.       :
                    ...o0o...

**<u>MEMORANDUM</u>**

      The plaintiff, Jose Reuter, representing himself *pro se*, filed this action stemming from

the removal of his elderly mother from his care by the Washington County Department of Social

Services ("DSS") and its Adult Protective Services Unit ("APS").  The complaint named several

groups of defendants: the Board of County Commissioners of Washington County and Gregory

Snook (collectively, "the Board defendants"); David Engle, John Kenney, Paula Price, Anne

Bushong, Timothy Gordon, Judy Barron, and Alice Sencindiver (collectively, "the State

defendants"); Washington County Commission on Aging, Susan MacDonald, and Lynn Smith

(collectively, "the WCCA defendants"); Washington County Hospital Association, Washington

County Hospital Health Care, Elise Culler, Ray Belen, and Carolyn Fleener (collectively, "the

Washington County Hospital defendants"); Ify Onyia; Martha Feigley; Dr. Paul Theodoni; and

Dawn Morales.[1]  Most of the defendants have filed motions to dismiss against Mr. Reuter on

various grounds; in particular, the State defendants have moved to dismiss, *inter alia*, on the

---

[1] Several of these names were misspelled in the complaint.  The complaint did not list
Ms. Morales in the case caption but included her in the "Federal Complaint Mailing List"; Mr.
Reuter asserted subsequently that he had intended to name her as a defendant.  In any event, Ms.
Morales has filed a motion to dismiss.

basis that the plaintiff has failed to state any legal claim.  The court will grant this particular

motion and will dismiss the case against all defendants with prejudice, unless the plaintiff shows

good reason not to do so by written filing, due August 23, 2006.[2]


I.  Background

     The following are the key facts alleged in the complaint, largely as summarized by the

State defendants.  Plaintiff's mother, Guadelupe Castro, is an 81-year-old Alzheimer patient.

(Compl. at 2.)  Based upon a report of suspected abuse or neglect of Mrs. Castro, APS worker

Paula Price initiated an investigation. (*Id.* at 3.)  During her first attempt at entry, Ms. Price

explained to plaintiff that there was an allegation of maltreatment and she needed to see his

mother. (*Id.*)  Mr. Reuter refused to allow Ms. Price to see his mother. (*Id.*)  On the second

attempt to visit Mrs. Castro, Mr. Reuter allowed Ms. Price and Anne Bushong, the Medicaid

Waiver Supervisor at DSS, to enter. (*Id.*)  During this visit, Ms. Price observed large orange

restraints, which Mr. Reuter claimed are used to protect his mother from sliding down from her

chair. (*Id.* at 5, ¶ c.)  Mr. Reuter admits that if he did not use the restraints, the chair would

"impel toward the front creating a dangerous situation." (*Id.*)

     On July 7, 2005, APS received another report of suspected neglect from Ms. Feigley, a

health services worker. (*Id.* at 4.)  Ms. Feigley reported that Mrs. Castro had the same clothes on

---

     [2] Ms. Onyia and Ms. Feigley have filed answers, which can be fairly construed as
motions to dismiss.  The one defendant who has yet to file any response in this case, Dr.
Theodoni, appears nowhere among the complaint's allegations and apparently has not been
served.  Because the plaintiff cannot state a valid claim against any named defendant, the court
will dismiss the action against all defendants on these grounds, unless the plaintiff shows good
reason not to do so by written filing, due August 23, 2006.

for two weeks, that she had not been bathed, and was left home alone after being given an overdose of medication to sleep. (*Id.*)  She also stated that the folds of Mrs. Castro's skin were raw from lack of hygiene. (*Id.*)  When Ms. Price attempted to visit Mrs. Castro's home to investigate this report, Mr. Reuter refused to permit her entry unless she obtained a court order. (*Id.* at 3; *see also id.* Ex. 1 (Affidavit of Paula Price).)

Based on an order from the Circuit Court for Washington County, dated July 12, 2005, and accompanied by the Washington County Sheriff's Department, Ms. Price did enter Mrs. Castro's home. (*See* State Defs.' Mot. to Dismiss, Ex. A, Emergency Protective Services Order.) Mr. Reuter alleges that Ms. Price and two officers forced his mother into a chair by "brute force." (Compl. at 6.)  After determining that Mrs. Castro needed urgent medical care, they transported her to the Washington Hospital Emergency Unit.  (*See id.*, Ex. 5.)  On July 20, 2005, the circuit court entered a Supplemental Emergency Protective Services Order, appointing David Engle, in his capacity as the Director of the Washington County DSS, as the temporary guardian of Mrs. Castro and revoking Mr. Reuter's power of attorney for his mother. (*Id.*, Ex. 5A.)   Mr. Reuter eventually signed an agreement with the DSS, after being "coerce[d] with duress," that "gave back everything that was taken from [plaintiff] except that know [sic] he must look for a suitable living place for his mother." (*Id.* at 6.)[3]

Mr. Reuter further alleges that Ms. Bushong's letter stating the DSS's intent to seek

---

[3] In response to the court's request after he filed his complaint, Mr. Reuter submitted a ruling by a Maryland Administrative Law Judge, dated November 2, 2005, denying his administrative appeal, in which he asked for medical insurance and a monthly stipend from DSS. The ruling noted that Mr. Reuter and the DSS signed a Safety Plan and Agreement on August 22, 2005, pursuant to which Mrs. Castro was placed in an assisted living facility and an adult day care program, and Mr. Reuter's power of attorney was reinstated.

permanent guardianship of his mother was "blackmail with extortion" and in violation of his

Fourteenth Amendment rights. Ms. Price requested defendants Barron and Sencindiver, who are

employees of the Washington County Health Department, to assess the apartment where Mrs.

Castro was living. (*Id.* at 9.)  Mr. Reuter claims that Ms. Price's request for this assessment and

other records was only for the purpose of finding information to remove his mother, which

violated his Fourteenth Amendment rights. Mr. Reuter claims that he has been defamed by Ms.

Price because "where the hand of Mrs. Price has been, [he] is look[ed] at as a criminal and evil

person." (*Id.*)

    As a result of these actions, Mr. Reuter claims that he is bankrupt, living in his

stepmother's home, looking for a job, and concerned about his mother. (*Id.* at 6.) As relief, Mr.

Reuter seeks monetary damages in the amount entitled under the Medicaid Waiver program and

$50,000. He also seeks equitable and injunctive relief to bar DSS from "interfering" with his

family.  (*Id.* at 10.)


II. Standard of review

    "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint;

importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of

a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th

Cir. 1999) (internal quotation marks and alterations omitted).  When ruling on such a motion, the

court must "accept the well-pled allegations of the complaint as true," and "construe the facts

and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra

v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  Consequently, a motion to dismiss under

Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Edwards*, 178 F.3d at 244. In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions. *See, e.g.*, *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (noting that the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions); *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995) (affirming Rule 12(b)(6) dismissal with prejudice because the plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law).

Finally, "[p]ro se complaints are generally 'held to less stringent standards than formal pleadings drafted by lawyers' and are generally not dismissed unless it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Allen v. Brodie*, 573 F.Supp. 87, 89 (D.Md.1983) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *White v. White*, 886 F.2d 721, 725 (4th Cir. 1989).


III. <u>Analysis</u>

A. <u>§ 1983</u>

The plaintiff's primary claim is brought under 42 U.S.C. § 1983, based on alleged violations of the Fourth and Fourteenth Amendments. Because the facts alleged do not state a claim for a violation of either constitutional provision, the § 1983 claim must be dismissed in its

entirety.[4]  *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) (the first step in evaluating a § 1983 claim is to "identify the exact contours of the underlying right said to have been violated" to determine "whether the plaintiff has alleged a deprivation of a constitutional right at all").

The facts in the complaint do not validly allege a violation of the Fourth Amendment. Although the Fourth Amendment generally applies to entries into the home by social workers, *see Doe v. Heck,* 327 F.3d 492, 509 (7th Cir. 2003); *Dubbs v. Head Start*, Inc. 336 F.3d 1194, 1205 (10th Cir. 2003), "investigative home visits by social workers are not subject to the same scrutiny as searches in the criminal context." *Wildauer v. Frederick County*, 993 F.2d 369, 372 (4th Cir. 1993) (citing *Wyman v. James*, 400 U.S. 309, 318 (1971)).  In this case, the state actors had obtained a prior court order authorizing the entry and removal of Mrs. Castro.[5]  *See Gedrich v. Fairfax County Dept. of Family Services*, 282 F.Supp.2d 439, 469 (E.D.Va. 2003) ("In the context of removing a child from her home and family, a seizure is reasonable if (1) it is pursuant to a court order; (2) it is supported by probable cause; or (3) it is justified by exigent circumstances, meaning that state officers 'have reason to believe that life or limb is in immediate jeopardy.'") (quoting *Brokaw v. Mercer County,* 235 F.3d 1000, 1010 (7th Cir.2000)); *cf. Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2000) (noting lack of court order to remove children from parents' home).  Moreover, the court order expressly recognized

---

[4] Although there are numerous possible grounds for dismissing the § 1983 claim against certain groups of defendants – e.g. Eleventh Amendment immunity, qualified immunity, state action requirement, state law immunity – this basis for dismissal applies to all defendants.

[5] Mr. Reuter's conclusory allegations of perjury by Ms. Price are an insufficient basis to question the validity of the court order.  *Cf. Franks v. Delaware,* 438 U.S. 154, 155-56 (1978).

exigent circumstances in the form of "a person within [plaintiff's residence]...in need of immediate aid." *Cf. Mincey v. Arizona*, 437 U.S. 385, 392 (1978); *U.S. v. Moss*, 963 F.2d 673, 678 (4th Cir. 1992). Plaintiff's bare reference to "brute force" is insufficient to state a claim that, in removing his mother from his premises, the officers used excessive force in violation of the Fourth Amendment.[6]

The complaint likewise does not allege a violation of any right protected by the Fourteenth Amendment. No court has acknowledged a constitutional right of adult children to care for their elderly parents, and there are numerous grounds for distinguishing the recognized liberty interest of parents in the custody, care, and management of their minor children. *See Lehr v. Robertson*, 463 U.S. 248 (1983). Moreover, courts have recognized that even this protected interest in familial integrity is not absolute; in particular, it is "limited by the compelling governmental interest in the protection of children – particularly where the children need to be protected from their own parents." *Coleman v. State of N.J. Div. of Youth and Family Services*, 246 F.Supp.2d 384, 388 (D.N.J. 2003) (citing *Croft v. Westmoreland County Children and Youth Services*, 103 F.3d 1123, 1125 (3d Cir. 1997)). "Therefore, the right to familial integrity does not include a parent's right to remain free from child abuse investigations." *Id.*; *see also Hodge v. Jones*, 31 F.3d 157, 164 (4th Cir. 1994). Nothing in the complaint credibly alleges that DSS and APS deviated from their standard procedures, as prescribed by state law and administrative regulations, in investigating and addressing Mrs. Castro's circumstances. Furthermore, Mr. Reuter consented to the Safety Plan & Agreement, and cannot evade the

---

[6] Furthermore, any such force would have been directed towards Mrs. Castro, not Mr. Reuter.

implications of that consent through conclusory allegations of coercion or duress.

       B. <u>State law claims</u>

       The complaint also alleges counts of perjury, defamation, slander, and blackmail, but fails to state a valid claim under any of these theories.  There is no civil liability for committing perjury, outside of limited exceptions inapplicable here.  *See Stevens v. Brown*, 564 F.Supp. 368, 370 (D.N.C. 1983) (applying North Carolina law); 60A AM. JUR. 2d Perjury § 104.  Likewise, Maryland law does not recognize a civil cause of action for extortion or blackmail.  *See Yang v. Lee*, 163 F.Supp.2d 554, 563 (D.Md. 2001).

       The plaintiff also has not alleged a prima facie case of defamation under Maryland law. *See Rosenberg v. Helinski*, 616 A.2d 866, 871 (Md. 1992) ("To recover for defamation, a plaintiff must ordinarily establish that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm."); *Nanji v. National Geographic Soc.*, 403 F.Supp.2d 425, 430-31 (D.Md. 2005).  Even to the extent he has identified particular defaming statements, the plaintiff has not alleged any legally cognizable harm, nor has he presented a factual basis to infer that the underlying content of any such statement was false. His allegation that Ms. Feigley committed slander *per se* is insufficient as well, given that she made no "imputations (1) of crime, (2) of a loathsome disease [or] (3) affecting the defamed in his business, trade, profession, office, or calling." *General Motors Corp. v. Piskor*, 340 A.2d 767, 782-83 (Md.App. 1975).

IV. <u>Conclusion</u>

The court does not doubt that the plaintiff was distressed by the events described in his complaint.  He has not, however, presented the court with any basis for legal relief. Accordingly, the State defendants' motion to dismiss will be granted, and the court will dismiss the plaintiff's case against all defendants with prejudice, unless the plaintiff shows good reason not to do so by a written filing, due August 23, 2006.

A separate Order follows.


<u>August 9, 2006</u>                                  ____/s/_____
Date                                                       Catherine C. Blake
                                                              United States District Judge